**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————— x

Lark Phillips, individually and on behalf of all    :
others similarly situated,    :
    :   Case No.
    Plaintiff,    :
    :
v.    :
    :
Publications International Limited,    :   **CLASS ACTION COMPLAINT**
    :
    Defendant.    :   <u>**JURY TRIAL DEMANDED**</u>
    :
    :
    :

———————————————————— x

Plaintiff, Lark Phillips, (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

<u>**NATURE OF THE ACTION**</u>

1.    This action seeks to remedy the deceptive and misleading business practices of Publications International Limited., (hereinafter "Defendant") with respect to the marketing and sales of their Brain Game booklets ("Products"), which falsely promise to "lower your brain age in minutes a day," throughout the state of New York and throughout the country.

2.    Defendant markets the Products as purporting to "lower your brain age in minutes a day;" however, as described *infra*, this is false.

3.    A representative example of Defendant's Products with this representation is displayed below:



4.     Unfortunately for consumers, as described in greater detail below, the Products cannot lower brain age.

5.     Thus, Defendant's claims, representations, and warranties are false and misleading.

6.     Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentations that the Products lower brain age when purchasing the Products.  Absent this misrepresentation, Plaintiff and Class Members would not have purchased the Products.  Given that Plaintiff and Class Members paid for Products they would not otherwise have purchased and/or paid a premium for the Products based on Defendant's misrepresentation, Plaintiff and Class Members suffered an injury in the amount of the purchase price of the Products and/or premium paid.

7.     Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350.  Defendant breached and continues to breach its warranties regarding the Products.  Defendant has been and continues to be unjustly enriched.  Accordingly, Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

8.  As the Federal Trade Commission has noted: "whether it's teaching toddlers to read, boosting board scores for high school students, or addressing memory lapses that concern older consumers, more companies are marketing products with the promise of improved cognition.[1] Many of these promises are simply false.

9.  Nevertheless, companies are drawn to this industry by increasingly attractive sales numbers.  The same companies gain market share and increase profits by misleading consumers regarding the benefits of using their products despite the fact that there is a dearth of legitimate, randomized, and controlled trials that support these companies' claims.

---

[1] https://www.ftc.gov/business-guidance/blog/2016/01/mind-gap-what-lumosity-promised-vs-what-it-could-prove

10.    Defendant promises that not only will using its Products lower your brain age, but that it can be done in a matter of "minutes a day."

11.    "Brain Age" is a neuro imaging-based biomarker[2] that reveals aging related changes in the brain, including grey matter atrophy, cortical thinning, and white matter volume loss.[3]

12.    Aging is an inevitable biological process, characterized by the gradual accumulation of cellular and tissue damage. The brain is particularly susceptible to the effects of aging, undergoing many structural and functional changes over the lifespan, which impact cognition.[4]

13.    White matter volume increases rapidly during early childhood, peaks around age 30, and then begins to decline after age 50.[5] Cortical thinning occurs by middle age.[6] Although gray matter atrophy is commonly observed with aging, it is highly variable, even among healthy people of the same age.[7]

14.    Brain age is distinct from "neuroplasticity," which is "the ability of the nervous system to change its activity in response to intrinsic or extrinsic stimuli by reorganizing its

---

[2] Wrigglesworth J, Harding IH, Ward P, Woods RL, Storey E, Fitzgibbon B, Egan G, Murray A, Shah RC, Trevaks RE, Ward S, McNeil JJ, Ryan J; ASPREE investigator group. Factors Influencing Change in Brain-Predicted Age Difference in a Cohort of Healthy Older Individuals. J Alzheimers Dis Rep. 2022 Apr 4;6(1):163-176. doi: 10.3233/ADR-220011. PMID: 35591948; PMCID: PMC9108625.

[3] Jiang R, Scheinost D, Zuo N, Wu J, Qi S, Liang Q, Zhi D, Luo N, Chung YC, Liu S, Xu Y, Sui J, Calhoun V. A Neuroimaging Signature of Cognitive Aging from Whole-Brain Functional Connectivity. Adv Sci (Weinh). 2022 Aug;9(24):e2201621. doi: 10.1002/advs.202201621. Epub 2022 Jul 10. PMID: 35811304; PMCID: PMC9403648.

[4] Id.

[5] Groh J, Simons M. White matter aging and its impact on brain function. Neuron. 2025 Jan 8;113(1):127-139. doi: 10.1016/j.neuron.2024.10.019. Epub 2024 Nov 13. PMID: 39541972.

[6] David H. Salat, Randy L. Buckner, Abraham Z. Snyder, Douglas N. Greve, Rahul S.R. Desikan, Evelina Busa, John C. Morris, Anders M. Dale, Bruce Fischl, Thinning of the Cerebral Cortex in Aging, *Cerebral Cortex*, Volume 14, Issue 7, July 2004, Pages 721–730, https://doi.org/10.1093/cercor/bhh032

[7] Vigneshwaran V, Wilms M, Forkert ND. The causal link between cardiometabolic risk factors and gray matter atrophy: An exploratory study. Heliyon. 2023 Oct 31;9(11):e21567. doi: 10.1016/j.heliyon.2023.e21567. PMID: 38027770; PMCID: PMC10661200.

structure, functions, or connections."[8]  While, learning or improving a new skill, like playing a brain game, may potentially result in new neural connections (as a result of neuroplasticity), there is no evidence or support for the proposition that it can reverse age-related structural changes like grey matter atrophy, cortical thinning, and white matter volume loss.

15.    Scientifically sound studies show that brain aging is impacted or accelerated by a multitude of factors, including but not limited to waist-to-hip ratio, sex, ethnicity, job satisfaction, diabetes, hypertension, daily coffee consumption, and smoking.[9] [10]

16.    In other words, many genetic and environmental factors can have an impact on certain aspects of the structure and function of the human brain.  And the structures and functions associated with aging include all of the following: grey matter volume, cerebral cortex thickness, and white matter volume.

17.    Thus, by claiming that its Products "lower your brain age," Defendant is, in effect making the false representation, that its Products can, notwithstanding the multitude of genetic and environmental factors that may or may not be present, reverse grey matter atrophy,[11] cortical thinning, and white matter volume loss.  Simply put, this is not possible.

18.    Further, given that a healthy person in his or her 20s or 30s is still developing white matter[12] and does not experience age-related cortical thinning,[13] it is obviously false on its face to

[8] Puderbaugh M, Emmady PD. Neuroplasticity. 2023 May 1. In: StatPearls [Internet]. Treasure Island (FL): StatPearls Publishing; 2025 Jan–. PMID: 32491743.

[9] Korbmacher M, Gurholt TP, de Lange A-MG, van der Meer D, Beck D, Eikefjord E, Lundervold A, Andreassen OA, Westlye LT and Maximov II (2023) Bio-psycho-social factors' associations with brain age: a large-scale UK Biobank diffusion study of 35,749 participants. Front. Psychol. 14:1117732. doi: 10.3389/fpsyg.2023.1117732

[10] Vigneshwaran V, Wilms M, Forkert ND. The causal link between cardiometabolic risk factors and gray matter atrophy: An exploratory study. Heliyon. 2023 Oct 31;9(11):e21567. doi: 10.1016/j.heliyon.2023.e21567. PMID: 38027770; PMCID: PMC10661200.

[11] my.clevelandclinic.org/health/body/24831-grey-matter

[12] Groh J, Simons M. White matter aging and its impact on brain function. Neuron. 2025 Jan 8;113(1):127-139. doi: 10.1016/j.neuron.2024.10.019. Epub 2024 Nov 13. PMID: 39541972.

[13] David H. Salat, Randy L. Buckner, Abraham Z. Snyder, Douglas N. Greve, Rahul S.R. Desikan, Evelina Busa, John C. Morris, Anders M. Dale, Bruce Fischl, Thinning of the Cerebral Cortex in Aging, *Cerebral Cortex*, Volume 14, Issue 7, July 2004, Pages 721–730, https://doi.org/10.1093/cercor/bhh032

claim that, for instance, a twenty-five-year old's brain age (i.e. the structure and function, including white matter volume and cerebral cortex volume) will be "lowered" by playing a brain game.

19.    Needless to say, there are no studies showing that using Defendant's Products does or can reverse grey matter atrophy, cortical thinning, and white matter volume loss.  Thus, there are no studies showing that Defendant's Products can "lower your brain age."  Similarly, there are no studies showing that while the cerebral cortex is still thickening, and white and grey matter are still developing, Defendant's Products can somehow reverse that development and thus "lower your brain age."

20.    Through its deceptive advertising and labeling, Defendant has violated, *inter alia*, NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label, or other thing containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article which, to their knowledge, is falsely described or indicated upon any such package or vessel containing the same, or label thereupon, in any of the particulars specified.

21.    Consumers rely on marketing and information in making purchasing decisions.

22.    By marketing the Products as being able to lower brain age and by placing that representation in a prominent location throughout the Class Period, Defendant knows that this claim is material to consumers.

23.    Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

24.    Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

25.    Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

26.    In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for Products marketed as being able to lower brain age over comparable products not so marketed.

27.    As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class Members in that they:

    a.    Paid a sum of money for Products that were not what Defendant represented;

    b.    Paid a premium price for Products that were not what Defendant represented;

    c.    Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted; and

    d.    Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented.

28.    Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products.

29.     Plaintiff and the Class Members paid for Products that lower brain age.  Since the Products do not perform as advertised, the Products Plaintiff and the Class Members received were worth less than the Products for which they paid.

30.     Plaintiff and the Class Members all paid money for the Products; however, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions.  Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products.  Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

31.     Plaintiff and Class Members read and relied on Defendant's representations about the benefits of using the Products and purchased Defendant's Products based thereon.  Had Plaintiff and Class Members known the truth about the Products, i.e., that they do not lower brain age, they would not have been willing to purchase them at any price, or, at minimum would have paid less for them.

## JURISDICTION AND VENUE

32.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d), in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of the state of New York, and Defendant is a citizen of Illinois; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

33.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

34.    Venue is proper because Plaintiff and many Class Members reside in the Southern District of New York, and throughout the state of New York.  A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

**PARTIES**

**Plaintiff**

35.    Plaintiff is an individual consumer who, at all times material hereto, was a citizen of New York State and resided in New York County, New York.  Plaintiff purchased the Products during the Class Period.  Prior to purchasing the Products, Plaintiff read Defendant's Products' booklet covers.  The Products' booklet covers for the Products Plaintiff purchased contained the representation that they lower your brain age in minutes a day.

36.    Plaintiff purchased the Products in reliance on Defendant's representation.  Plaintiff believes that products that are labeled as being able to lower brain age will actually do that.  If the Products actually were able to lower brain age as represented by Defendant, Plaintiff would purchase the Products in the immediate future.

37.    Had Defendant not made the false, misleading, and deceptive representation, Plaintiff would not have been willing to pay the same amount for the Products, and, consequently, would not have been willing to purchase the Products.  Plaintiff purchased, purchased more of and paid more for, the Products than she would have had she known the truth about the Products.  The Products Plaintiff received were worth less than the Products for which she paid.  Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

38.    Defendant is an Illinois corporation with its principal place of business in Chicago, Illinois.

39.    Defendant manufactures, markets, advertises, and distributes the Products throughout the United States.  Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling for the Products.

## CLASS ALLEGATIONS

40.    Plaintiff brings this matter on behalf of herself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct.  Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

41.    The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period (the "Class").

42.    Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the date of New York at any time during the Class Period (the "New York Subclass").

43.    The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

44.    The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

45.    <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers in the Class and the New York Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

46.    <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.    Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.    Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

c.    Whether Defendant made false and/or misleading statements to the Class and the public concerning the contents of its Products;

d.    Whether Defendant's false and misleading statements concerning its Products were likely to deceive the public;

e.    Whether Plaintiff and the Class are entitled to injunctive relief; and

f.    Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members?

47.    <u>Typicality</u>: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

48.    <u>Adequacy</u>: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent, her consumer fraud claims are common to all members of the Class and she has a strong interest in vindicating her rights, she has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

49.    <u>Predominance</u>: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the

Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

50.    Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

      a.    The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

      b.    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

      c.    When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

      d.    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

      e.    Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

      f.    This class action will assure uniformity of decisions among Class Members;

      g.    The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

      h.    Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

      i.    It would be desirable to concentrate in this single venue the litigation of all class members who were induced by Defendant's uniform false advertising to purchase its Products because they are purported to lower brain age.

51.    Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members

predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**INJUNCTIVE CLASS RELIEF**

52.    Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief.  Here, Defendant has engaged in conduct resulting in misleading consumers about the ability of its Products to lower brain age.  Since Defendant's conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendant's continuing misconduct.  Plaintiff would purchase the Products again if they actually were able to lower brain age.

53.    The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

a.    <u>Numerosity</u>: Individual joinder of the injunctive Class Members would be wholly impracticable.  Defendant's Products have been purchased by thousands of people throughout the United States;

b.    <u>Commonality</u>: Questions of law and fact are common to members of the Class.  Defendant's misconduct was uniformly directed at all consumers.  Thus, all members of the Class have a common cause against Defendant to stop its misleading conduct through an injunction.  Since the issues presented by this injunctive Class deal exclusively with Defendant's misconduct, resolution of these questions would necessarily be common to the entire Class.  Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

i.Resolution of the issues presented in the 23(b)(3) class;

ii.Whether members of the Class will continue to suffer harm by virtue of Defendant's deceptive products' marketing and labeling; and

iii.Whether, on equitable grounds, Defendant should be prevented from continuing to deceptively mislabel its Products.

c.    <u>Typicality</u>: Plaintiff's claims are typical of the claims of the injunctive Class because her claims arise from the same course of conduct (i.e. Defendant's deceptive and misleading marketing, labeling, and advertising practices). Plaintiff is a typical representative of the Class because, like all members of the injunctive Class, she purchased Defendant's Products which were sold unfairly and deceptively to consumers throughout the United States.

d.    <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the injunctive Class. Her consumer protection claims are common to all members of the injunctive Class and she has a strong interest in vindicating her rights. In addition, Plaintiff and the Class are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

54.    The injunctive Class is properly brought and should be maintained as a class action under Rule 23(b)(2) because Plaintiff seeks injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class. Certification under Rule 23(b)(2) is appropriate because Defendant has acted or refused to act in a manner that applies generally to the injunctive Class (i.e. Defendant has marketed its Products using the same misleading and deceptive labeling to all of the Class Members). Any final injunctive relief or declaratory relief would benefit the entire injunctive Class as Defendant would be prevented from continuing its misleading and deceptive marketing practices and would be required to honestly disclose to consumers the nature of its Products. Plaintiff would purchase the Products again if they actually were able to lower brain age as represented by Defendant.

## CLAIMS

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and New York Subclass Members)**

55.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

56.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

57.    The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products and from charging consumers monies in the future.

58.    Defendant misleadingly, inaccurately, and deceptively advertises and markets the Products to consumers.

59.    Defendant's improper consumer-oriented conduct—including labeling and advertising the Products as being able to lower brain age—is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

60.    Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for Products that—contrary to Defendant's representations— are not able to lower

brain age.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

61.    Defendant's advertising and Products' labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products and to pay a premium price for them.

62.    Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

63.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory damages of $50 per unit sold, compensatory, treble and punitive damages, injunctive relief, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the New York Subclass Members)**

66.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

67.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

68.    N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination

thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

69.    Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Products inasmuch as they misrepresent that the Products are able to lower brain age.

70.    Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and paid a premium for the Products which —contrary to Defendant's representations— are not able to lower brain age.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

71.    Defendant's advertising and products' labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

72.    Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

73.    Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

74.    Defendant made the material misrepresentations described in this Complaint in Defendant's advertising and on the Products' labeling.

75.    Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

76.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory damages of $500

per unit sold, compensatory, treble and punitive damages, injunctive relief, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiff and All Class Members)**

77.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

78.    Defendant provided Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products are able to lower brain age.

79.    The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

80.    These affirmations of fact became part of the basis for the bargain and were material to Plaintiff's and Class Members' transactions.

81.    Plaintiff and Class Members reasonably relied upon Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

82.    Plaintiff learned the claims made by Defendant were false after she purchased the Product. Within a reasonable time after she knew or should have known of Defendant's breach, Plaintiff, on behalf of herself and Class Members, placed Defendant on notice of its breach, on April 16, 2025, via draft complaint, giving Defendant an opportunity to cure its breach, which it refused to do.  No response to Plaintiff's draft complaint was received from Defendant.

83.    Defendant thereby breached the following state warranty laws:

a.      Code of Ala. § 7-2-313;

b.      Alaska Stat. § 45.02.313;

c.      A.R.S. § 47-2313;

d.      A.C.A. § 4-2-313;

e.      Cal. Comm. Code § 2313;

f.      Colo. Rev. Stat. § 4-2-313;

g.      Conn. Gen. Stat. § 42a-2-313;

h.      6 Del. C. § 2-313;

i.      D.C. Code § 28:2-313;

j.      Fla. Stat. § 672.313;

k.      O.C.G.A. § 11-2-313;

l.      H.R.S. § 490:2-313;

m.      Idaho Code § 28-2-313;

n.      810 I.L.C.S. 5/2-313;

o.      Ind. Code § 26-1-2-313;

p.      Iowa Code § 554.2313;

q.      K.S.A. § 84-2-313;

r.      K.R.S. § 355.2-313;

s.      11 M.R.S. § 2-313;

t.      Md. Commercial Law Code Ann. § 2-313;

u.      106 Mass. Gen. Laws Ann. § 2-313;

v.      M.C.L.S. § 440.2313;

w.      Minn. Stat. § 336.2-313;

x.      Miss. Code Ann. § 75-2-313;

y.      R.S. Mo. § 400.2-313;

z.      Mont. Code Anno. § 30-2-313;

aa.     Neb. Rev. Stat. § 2-313;

bb.     Nev. Rev. Stat. Ann. § 104.2313;

cc.     R.S.A. 382-A:2-313;

dd.     N.J. Stat. Ann. § 12A:2-313;

ee.     N.M. Stat. Ann. § 55-2-313;

ff.     N.Y. U.C.C. Law § 2-313;

gg.     N.C. Gen. Stat. § 25-2-313;

hh.     N.D. Cent. Code § 41-02-30;

ii.     II. O.R.C. Ann. § 1302.26;

jj.     12A Okl. St. § 2-313;

kk.     Or. Rev. Stat. § 72-3130;

ll.     13 Pa. Rev. Stat. § 72-3130;

mm.     R.I. Gen. Laws § 6A-2-313;

nn.     S.C. Code Ann. § 36-2-313;

oo.     S.D. Codified Laws, § 57A-2-313;

pp.     Tenn. Code Ann. § 47-2-313;

qq.     Tex. Bus. & Com. Code § 2.313;

rr.     Utah Code Ann. § 70A-2-313;

ss.     9A V.S.A. § 2-313;

tt.     Va. Code Ann. § 59.1-504.2;

uu.     Wash. Rev. Code Ann. § 6A.2-313;

vv.     W. Va. Code § 46-2-313;

ww.     Wis. Stat. § 402.313; and

xx.     Wyo. Stat. § 34.1-2-313.

84.     Defendant breached the express warranty because the Products are not able to lower brain age.

85.     As a direct and proximate result of Defendant's breach of the express warranty, Plaintiff and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a)     Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b)     Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct its practices and to comply with consumer protection statutes nationwide, including New York consumer protection laws;

(c)     Awarding monetary damages and treble damages;

(d)     Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(e)     Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(f)     Awarding punitive damages;

(g)     Awarding Plaintiff and Class Members their costs and expenses incurred in this

action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and

reimbursement of Plaintiff's expenses; and

(h)     Granting such other and further relief as the Court may deem just and proper.

Dated: June 25, 2025

**SULTZER & LIPARI, PLLC**

Joseph Lipari /s/

By: _____

Joseph Lipari
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
liparij@thesultzerlawgroup.com

*Counsel for Plaintiff and the Class*
